1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  YASSER EMAD,                                    CASE NO. C14-1233 MJP

11                          Plaintiff,              ORDER GRANTING IN PART,
                                                    DENYING IN PART DEFENDANT'S
12          v.                                      MOTION FOR SUMMARY
                                                    JUDGMENT
13  THE BOEING COMPANY,

14                          Defendant.

15

16          THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment.

17  (Dkt. No. 28.)  Having considered the Parties' briefing and all related papers, the Court

18  GRANTS in part and DENIES in part the motion.

19                                  **Background**

20          Plaintiff Yasser Emad brings suit against his employer, the Boeing Company, for

21  employment discrimination on the basis of race, national origin, and religion in violation of Title

22  VII of the Civil Rights Act of 1964, Section 1981 of the Civil Rights Act, and the Washington

23  Law Against Discrimination, and for intentional and negligent infliction of emotional distress.

24  (Dkt. No. 1.)

1          Plaintiff, an Egyptian-born Muslim man who identifies as Arab-American and African-

2    American, began working as an Assembler/Installer at Boeing's Everett, Washington facility in

3    January 2012.  (Dkt. No. 36 at 1.)  Plaintiff alleges that since early 2012, he has been repeatedly

4    confronted with racial and religious epithets from both coworkers and supervisors, including

5    "camel jockey," "Achmed,"[1] "Al-Qaeda," "Osama bin Laden," "sand n-----,"[2] and "Ali-Baba

6    terrorist."  (Dkt. Nos. 34, 35.)  Plaintiff alleges that coworkers asked him questions such as "why

7    [you] walk[] and talk[] like a n-----?" and "when are you going to blow something up so you can

8    get your seventy-two virgins?" and suggested it would be funny if Plaintiff put on a turban and

9    took a photograph of himself on top of a Boeing plane holding a plastic rifle.  (Dkt. No. 34 at 6,

10   8.)  Plaintiff alleges that a coworker, observing Plaintiff wearing a t-shirt with the words "Major

11   League Muslim" and depictions of a person in three prayer stances on it, commented "Oh, is that

12   three guys fucking on your shirt?  I didn't know that's how Muslims rolled."  (Id. at 4.)  Plaintiff

13   alleges that on one occasion, after he began reporting the offensive conduct, someone put

14   chlorine or bleach in his water bottle.  (Id. at 10.)  Plaintiff also contends that he was denied

15   workplace opportunities by supervisors on the basis of race, religion, and national origin, and

16   that the pervasive workplace harassment intensified when he reported the offensive conduct.  (Id.

17   at 3-13.)    Plaintiff contends that although he reported multiple incidents of harassment,

18   including the water bottle incident, to Boeing management in accordance with their policies,

19   Boeing failed to take appropriate action.  (Id.)

20          Defendant now moves for summary judgment on all of Plaintiff's claims.  (Dkt. No. 28.)

21

22   _____

23   [1] "Achmed" is an apparent reference to the character "Achmed the terrorist" from a
     comedy routine by Jeff Dunham.

24   [2] "N-----" is used to replace an offensive racial slur used to refer to a member of any
     dark-skinned people.

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 2

1

**Discussion**

2        I.        Legal Standards

3                  A.        Summary Judgment

4        Summary judgment is proper where "the movant shows that there is no genuine issue as

5  to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6  56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

7  of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met

8  its burden, the underlying evidence must be viewed in the light most favorable to the non-

9  moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

10                 B.        Title VII

11       Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

12  fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

13  individual with respect to his compensation, terms, conditions, or privileges of employment,

14  because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–

15  2(a)(1).

16       Absent direct evidence of discriminatory animus, claims of employment discrimination

17  are typically analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411

18  U.S. 792, 802 (1973). Plaintiff bears the initial burden of establishing a prima facie case of

19  discrimination. Once established, the prima facie case creates a rebuttable presumption that the

20  employer unlawfully discriminated against the employee. Lyons v. England, 307 F.3d 1092,

21  1112 (9th Cir. 2002). The burden of production shifts to the employer to articulate a legitimate,

22  nondiscriminatory reason for the plaintiff's rejection. Id. If the employer sustains the burden,

23  the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 3

1  pretext for discrimination.  Id.  This burden-shifting scheme is designed to assure that a plaintiff

2  has his or her day in court despite the unavailability of direct evidence.  Enlow v. Salem-Keizer

3  Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004) (citing Trans World Airlines, Inc. v.

4  Thurston, 469 U.S. 111, 121 (1985)).

5                 C.       Section 1981, Washington Law Against Discrimination

6          To overcome summary judgment under the Washington Law Against Discrimination

7  ("WLAD"), a plaintiff only needs to show that a reasonable jury could find that Plaintiff's

8  protected trait was a substantial factor motivating the employer's adverse actions.  Scrivener v.

9  Clark Coll., 181 Wn.2d 439, 445 (2014).  This is a burden of production, not persuasion, and

10  may be proved through direct or circumstantial evidence.  Id.  Where a plaintiff lacks direct

11  evidence, Washington courts use the burden-shifting analysis articulated in McDonnell Douglas

12  Corp. v. Green, 411 U.S. 792 (1973), to determine the proper order and nature of proof for

13  summary judgment.  Id.

14          The "legal principles guiding a court in a Title VII dispute apply with equal force in a

15  § 1981 action."  Manatt v. Bank of Am., NA, 339 F.3d 792, 797 (9th Cir. 2003) (citations

16  omitted).

17          II.       Disparate Treatment

18          "In responding to a summary judgment motion in a Title VII disparate treatment case, a

19  plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory

20  reason more likely than not motivated the defendant's decision, or alternatively may establish a

21  prima facie case under the burden-shifting framework set forth in McDonnell Douglas."

22  Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005) (citation

23  omitted).  Direct evidence is evidence which, if believed, proves the fact of discriminatory

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 4

1  animus without inference or presumption.  Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090,

2  1095 (9th Cir. 2005).  Direct evidence typically consists of clearly sexist, racist, or similarly

3  discriminatory statements or actions by the employer.  Id.  Here, Plaintiff has chosen to rely on

4  direct evidence that a discriminatory reason more likely than not motivated Defendant's

5  decision.  (Dkt. No. 34 at 15-17.)

6      Defendant argues Plaintiff's disparate treatment discrimination claim fails because (1)

7  Plaintiff did not suffer an adverse employment action because the denial of a temporary

8  management position cannot be considered an adverse employment action, and, (2) the denial of

9  the temporary management position was based on senior management's "concern about process

10  issues" regarding filing the position, and "not about [Plaintiff]."  (Dkt. No. 28 at 13-14.)

11  Plaintiff argues the denial of the temporary management position was an adverse employment

12  action that affected his wages, hours, and chances for promotion, and the denial was based on

13  Plaintiff's manager regarding him as an "Ali-Baba terrorist."  (Dkt. No. 34 at 15-17.)

14      Adverse employment actions include an array of disadvantageous changes in the

15  workplace that materially affect the terms and conditions of a person's employment.  Davis v.

16  Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).  Adverse employment actions are not

17  limited to cognizable employment actions such as discharge, transfer, or demotion.  See Lyons v.

18  England, 307 F.3d 1092, 1118 (9th Cir. 2002).  Some actions having been found to constitute

19  adverse employment actions include: issuing undeserved performance ratings, negatively

20  affecting an employee's compensation, giving an employee a more burdensome work schedule,

21  and excluding an employee from meetings, seminars and positions that would have made the

22  employee eligible for salary increases.  See Delacruz v. Tripler Army Med., 507 F. Supp. 2d

23

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 5

1    1117, 1123-24 (D. Haw. 2007) (collecting cases); Ray v. Henderson, 217 F.3d 1234, 1243 (9th

2    Cir. 2000).

3          Here, Plaintiff alleges he was denied a temporary management position in August 2012

4    because of his race, religion, and national origin.  (Dkt. No. 34.)  Plaintiff alleges that Mr. Hall, a

5    manager with control over a temporary promotion to a team lead position, denied Plaintiff the

6    opportunity, despite the fact he had begun training for the position, while commenting to a

7    coworker, "I'm not going to let that Ali-Baba terrorist be a team lead." (Id. at 15.)  Plaintiff

8    contends the denial cost him a two dollar per hour raise for the hours worked as a lead, two hours

9    of overtime pay for each day worked as a lead, and leadership experience that would have made

10   him more competitive for future discretionary promotions.  (Dkt. Nos. 34 at 16-17, 35 at 4.)

11         In support of his position, Plaintiff has produced a Statement Form provided to Boeing's

12   Equal Employment Opportunity Office by Team Lead Mike Baker, in which Baker reports he

13   overheard Hall say "I'm not going to have Ali Baba Terrorist be a Team Lead" in reference to

14   Plaintiff's candidacy for the temporary promotion.  (Dkt. No. 36-2 at 45.)  Plaintiff has also put

15   forward evidence that although certain managers claim he was denied the opportunity based on

16   "process issues," other employees had been trained for and had acted as temporary leads without

17   facing the same "process" he did.  (Dkt. No. 36-2 at 43.)

18         The Court finds Plaintiff has produced evidence sufficient to preclude summary judgment

19   on this claim.  A reasonable jury could conclude, based on the evidence submitted, that the

20   denial of the temporary management position was an adverse employment action, which affected

21   Plaintiff's compensation, hours, and opportunity for advancement, and that the adverse action

22   was based on a supervisor's discriminatory animus towards Arabs and Muslims.  Defendant

23   argues this denial was not a significant employment action because the monetary loss was only

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 6

1    $32.00, and that the denial was based on "a senior manager's concern about process issues."

2    (Dkt. No. 28 at 13-14.)  But these arguments rely on alternative interpretations of disputed facts,

3    and are not proper on summary judgment.  Summary judgment on Plaintiff's disparate treatment

4    discrimination claim is DENIED.

5           III.    Hostile Work Environment

6           To establish a prima facie case for a hostile work environment claim under Title VII or

7    § 1981, Plaintiff must show: (1) he was subjected to verbal or physical conduct because of his

8    race, national origin, or religion; (2) the conduct was unwelcome; (3) the conduct was

9    sufficiently severe or pervasive to alter the conditions of employment and create an abusive work

10   environment.  Manatt, 339 F.3d at 798.  The working environment "must both subjectively and

11   objectively be perceived as abusive.  Objective hostility is determined by examining the totality

12   of the circumstances and whether a reasonable person with the same characteristics as the victim

13   would perceive the workplace as hostile." Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055

14   (9th Cir. 2007) (internal quotation marks and citations omitted).  In evaluating the conduct at

15   issue, the required level of severity or seriousness varies inversely with the pervasiveness or

16   frequency of the conduct.  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1113 (9th Cir. 2004).

17          Under Washington law, a prima facie case requires that: (1) Plaintiff suffered unwelcome

18   harassment; (2) the harassment was because of race, national origin, or religion; (3) the

19   harassment affected the terms or conditions of employment; and (4) the harassment can be

20   imputed to the employer.  Washington v. Boeing, 105 Wn. App. 1, 12-13 (2000).

21          Defendant argues Plaintiff's hostile work environment claim fails because (1) Boeing

22   maintains an anti-harassment policy that is a reasonable mechanism for harassment prevention

23   and correction, and Plaintiff knew about the policy but unreasonably declined to report the

24

1  harassment according to the policy's requirements for almost a year; (2) Boeing immediately and

2  thoroughly investigated Plaintiff's harassment complaints once they were made and took prompt

3  corrective action with regards to each employee found to have engaged in offensive conduct; and

4  (3) harassment by supervisors was not severe or pervasive enough to affect the terms and

5  condition of employment.  (Dkt. No. 28 at 16-20.)  In other words, Defendant argues that

6  harassment by Plaintiff's supervisors or managers was not severe or pervasive, and that neither

7  coworker harassment nor supervisor harassment can be imputed to Boeing.  The Court addresses

8  these arguments in turn.

9                          A.     Severity and Pervasiveness of Supervisor Harassment

10         The Court finds Plaintiff has produced evidence sufficient to preclude summary judgment

11  on this basis.  A reasonable jury could conclude, based on the evidence submitted, that

12  harassment by managers and supervisors was severe and pervasive enough to alter the conditions

13  of employment and create a subjectively and objectively abusive work environment.

14         Plaintiff has submitted evidence that Mr. Hall, who had control over Plaintiff's wages,

15  hours, and working conditions, removed Plaintiff from training to become a temporary lead,

16  telling another colleague he made the decision because he would not allow an "Ali-Baba

17  terrorist" to serve as a team lead.  (Dkt. Nos. 35, 36-2 at 45.)  Plaintiff has submitted evidence

18  that a coworker, pointing to Plaintiff, commented to Mr. Hall that Boeing does not just build the

19  best airplanes, "they also come with a terrorist."  (Dkt. No. 35 at 9.)  Mr. Hall laughed at the

20  comment, and walked away.  (Id.)

21         Plaintiff has submitted evidence that Mr. Fink, another manager with control over

22  Plaintiff's wages, hours, and working conditions, played a video clip at the end of a crew

23  meeting, telling his crew to pay special attention to a very funny clip which featured a young

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 8

white girl crying after her father tells her that her skin will turn black when she turns four years old. (Dkt. No. 35 at 8.) Plaintiff has submitted evidence that Mr. Fink insisted on having pork dishes as the main dish at work potluck dinners, even after Plaintiff explained that Muslims could not eat pork. (Id. at 8-9.) After that, Mr. Fink brought two hams to the Thanksgiving dinner, commenting to Plaintiff, "I know how much you like pork, so I brought you some ham." (Id.) Plaintiff has submitted evidence that Mr. Fink once brought Plaintiff a socket that had been lost from his tool box, commenting to Plaintiff that "the guy who found it said that it belonged to the crazy looking Indian guy so [I] figured that was [you]." (Id. at 9.)

Plaintiff has submitted evidence that Mr. McNeil, a supervisor, began calling Plaintiff "camel jockey" after Plaintiff complained to McNeil about other coworkers referring to him as "Achmed." (Dkt. No. 35 at 10.) Plaintiff has submitted evidence that Mr. McNeil called Plaintiff a "terrorist" and "Taliban," and was often present when other coworkers used similar language to refer to Plaintiff. (Id. at 2.) Plaintiff has submitted evidence that Mr. Turner, another supervisor, regularly used racist language to refer to Plaintiff, and made a derogatory remark about a t-shirt depicting a man in three Muslim prayer stances. (Id. at 11.)

Courts have recognized "Title VII is not a general civility code." E.E.O.C. v. Prospect Airport Services, Inc., 621 F.3d 991, 998 (9th Cir. 2010). Nevertheless, Plaintiff has put forward sufficient evidence of frequent, consistent harassment by numerous people in leadership positions so as to create a genuine issue of material fact. Summary judgment on this basis is DENIED.

/

/

/

1                  B.      Harassment Imputable to Boeing and Vicarious Liability

2                    i.      Supervisor Harassment and Affirmative Defense

3       Under Washington law, where an owner, manager, partner or corporate officer personally

4 participates in the harassment, the harassment is imputed to the employer.  Glasgow v. Georgia-

5 Pac. Corp., 103 Wn.2d 401, 407 (1985).  Managers are those who have been given by the

6 employer the authority and power to affect the hours, wages, and working conditions of the

7 employer's workers.  Robel v. Roundup Corp., 148 Wn.2d 35, 48 n.5 (2002).

8       The Court finds that a genuine issue of material fact regarding whether a "manager"

9 participated in harassment precludes summary judgment under Washington law because a

10 reasonable fact finder could conclude that Mr. Hall and Mr. Fink had control over Plaintiff's

11 wages, hours, and working conditions, and thus that their harassment is imputable to Boeing.

12 See Glasgow, 103 Wn.2d at 407.

13       Under Title VII and § 1981, when harassment by a supervisor is at issue, an employer is

14 vicariously liable, subject to a potential affirmative defense.  See Faragher v. City of Boca Raton,

15 524 U.S. 775, 780 (1998).  If the supervisor's harassment culminates in a tangible employment

16 action, the employer is strictly liable.  Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).

17 A "supervisor" is any individual empowered by the employer to take tangible employment

18 actions against the victim.  Id.  A tangible employment action is "a significant change in

19 employment status, such as hiring, firing, failing to promote, reassignment with significantly

20 different responsibilities, or a decision causing a significant change in benefits."  Id. at 2442.

21       If no tangible employment action is taken, the employer may escape liability by

22 establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent

23 and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 10

1  advantage of the preventive or corrective opportunities that the employer provided.  Id. at 2439.

2  "Whether the employer has a stated antiharassment policy is relevant to the first element of the

3  defense.  And an employee's failure to use a complaint procedure provided by the employer will

4  normally suffice to satisfy the employer's burden under the second element of the defense."

5  Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 877 (9th Cir. 2001) (citing Burlington

6  Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (internal quotation marks omitted).

7       The Court finds that a genuine issue of material fact precludes summary judgment under

8  federal law because a reasonable fact finder could conclude that Mr. Hall was a "supervisor,"

9  that denying Plaintiff the temporary team lead position was a failure to promote that constituted a

10  "tangible employment action," and, therefore, that Boeing is strictly liable.  Summary judgment

11  on this basis is DENIED.

12                      ii.        Coworker Harassment

13       Under Washington law, harassment by coworkers and supervisors is imputed to the

14  employer only where the employer (1) authorized, knew about, or should have known about the

15  harassment, and (2) failed to take reasonably prompt and adequate corrective action.  Glasgow,

16  103 Wn.2d at 407.  This may be shown by proving (a) that complaints were made to the

17  employer through higher managerial or supervisory personnel, or by proving such a

18  pervasiveness of harassment at the work place as to create an inference of the employer's

19  knowledge or constructive knowledge of it, and (b) that the employer's remedial action was not

20  of such nature as to have been reasonably calculated to end the harassment.  Id.

21       Under Title VII and § 1981, when harassment by coworkers is at issue, the employer's

22  conduct is reviewed for negligence.  See Ellison v. Brady, 924 F.2d 872, 881 (9th Cir. 1991).  In

23  other words, "the employer may be liable if it knows or should know of the harassment but fails

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 11

1   to take steps reasonably calculated to end the harassment." <u>Dawson v. Entek Int'l</u>, 630 F.3d 928,

2   938 (9th Cir. 2011) (internal quotation marks and citation omitted).  The reasonableness of the

3   remedy depends on its ability to: (1) stop harassment by the person who engaged in harassment;

4   and (2) persuade potential harassers to refrain from unlawful conduct.  <u>Nichols</u>, 256 F.3d at 875.

5   When the employer undertakes no remedy, or where the remedy does not end the current

6   harassment and deter future harassment, liability attaches for both the past harassment and any

7   future harassment.  <u>Id.</u> at 875-76.

8        Here, Plaintiff has introduced evidence that coworkers harassed Plaintiff in front of

9   several different managers beginning shortly after he began his employment in January 2012, but

10  that the managers took no steps to correct or prevent the harassment.  (Dkt. No. 35.)  Plaintiff has

11  introduced evidence that despite being told that complaining to human resources about another

12  union member would "make him a target," Plaintiff eventually did report the harassment to

13  human resources in August 2012 and to Boeing's Equal Employment Office in December.  (<u>Id.</u>

14  at 2, 5-10.)  Plaintiff has introduced evidence that the harassment continued, and even worsened,

15  during Boeing's internal investigation, which concluded in March 2013.  (<u>Id.</u> at 2-10.)  Plaintiff

16  has submitted evidence that the harassment continued after that, resulting in Plaintiff filing a

17  charge with the Equal Employment Opportunity Commission ("EEOC") in September 2013.  (<u>Id.</u>

18  at 9.)  Plaintiff has submitted evidence that the harassment continues to this day, despite

19  Plaintiff's January 2014 transfer to Boeing's Renton facility.  (<u>Id.</u> at 9-11.)   Plaintiff has

20  submitted sufficient evidence for a reasonable fact finder to conclude Boeing knew or should

21  have known about the harassment.

22       Plaintiff has also submitted sufficient evidence for a reasonable fact finder to conclude

23  Boeing did not take steps reasonably calculated to end the harassment.  Plaintiff has submitted

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 12

1   evidence that despite Boeing's investigation in early 2013, the harassment continued and even

2   worsened.  (Dkt. No 35.)  Plaintiff has introduced evidence that Boeing declined to do any

3   meaningful investigation, at all, following the water bottle contamination incident.  (Dkt. No. 36-

4   2 at 13-36.)  Plaintiff has introduced evidence that at least one of the employees who received a

5   corrective action memorandum from Boeing for inappropriate conduct as a result of the internal

6   investigation was not effectively disciplined because he did not realize he had been found to

7   have violated any policies.  (Dkt. No. 36-1 at 81-82.)  Plaintiff has submitted evidence that

8   Renton coworkers continued to harass him, asking him if he was aware that "[his] people,"

9   referencing Muslims, had recently beheaded a journalist; whether or not he thought the prophet

10  Mohammed was a pedophile; and why he would name his son Islam, an "evil name."  (Dkt. No.

11  35 at 9-10.)  Plaintiff has submitted evidence that Renton coworkers commented to Plaintiff that

12  "with [his] beard [he] looks like Taliban now," and looks "like a terrorist."  (Id.)  Viewing the

13  evidence in the light most favorable to Plaintiff, Boeing neither stopped the harassment it knew

14  was occurring nor persuaded others to refrain from beginning to harass Plaintiff.

15      Defendant argues that it is "undisputed that Boeing immediately and thoroughly

16  investigated Emad's workplace harassment complaints," and that "after Boeing granted Emad's

17  request to be transferred to a new, higher level assignment in Boeing's Renton facility, Emad

18  was never again subjected to workplace harassment."  (Dkt. No. 28 at 17.)  Defendant argues that

19  it took sufficient corrective action against those employees who it did find had engaged in

20  inappropriate conduct by issuing corrective action memoranda to those employees.  (Id.)  With

21  regards to Plaintiff's harassment contentions at the Renton facility, Defendant argues that "no

22  reasonable jury could find Emad's assertions to be credible."  (Dkt. No. 38 at 4.)  Once again,

23  Defendant advances arguments that rely on its interpretation of disputed facts, and asks the Court

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 13

1    to make credibility assessments on summary judgment—assessments that are precluded by the

2    summary judgment standard itself.  See Matsushita Elec. Indus. Co., 475 U.S. at 587.  Summary

3    judgment on this basis is DENIED.

4        IV.    Retaliation

5         To establish a prima facie case of retaliation under both federal and Washington law,

6    Plaintiff must show: (1) he engaged in a protected activity, (2) he suffered an adverse

7    employment action, and (3) there was a causal link between his activity and the employment

8    decision.  Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003).

9         Defendant argues Plaintiff's retaliation claim fails because Plaintiff did not suffer an

10   adverse employment action because any retaliatory harassment by coworkers amounted to

11   nothing more than mere ostracism and thus was not an adverse employment action.  (Dkt. No. 28

12   at 14-16.)  Plaintiff argues he suffered a retaliatory adverse action in the form of increased

13   harassment from coworkers, including coworkers and managers falsely accusing Plaintiff of

14   proactively initiating the harassment in order to later entrap them by filing discrimination

15   complaints against them.  (Dkt. No. 34 at 24-25.)

16        Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to

17   discriminatory actions that affect the terms and conditions of employment."  Burlington N. &

18   Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).  To demonstrate that he suffered an adverse

19   employment action under the antiretaliation provision, Plaintiff "must show that a reasonable

20   employee would have found the challenged action materially adverse, which in this context

21   means it well might have dissuaded a reasonable worker from making or supporting a charge of

22   discrimination."  Id. at 68 (internal quotation marks and citation omitted).  The action must be

23   materially adverse because an employee's "decision to report discriminatory behavior cannot

24

1    immunize that employee from those petty slights or minor annoyances that often take place at

2    work and that all employees experience."  Id.

3          A hostile work environment may form the basis for a retaliation claim under Title VII.

4    Ray, 217 F.3d at 1244-45.  "Harassment for engaging in a protected activity . . . is the paradigm

5    of adverse treatment that is based on retaliatory motive and is reasonably likely to deter the

6    charging party or others from engaging in protected activity."  Id. at 1245 (internal quotation

7    marks and citation omitted).

8          The Court—having found that Plaintiff has produced enough evidence for a reasonable

9    jury to conclude Plaintiff was subjected to, and continues to be subject to, sufficiently severe and

10   pervasive harassment so as to alter the conditions of employment and create an abusive work

11   environment—finds that summary judgment on the retaliation claim is precluded.  Plaintiff has

12   established a genuine issue of material fact as to whether he suffered an adverse employment

13   action in the form of a hostile work environment.  Summary judgment on the retaliation claim is

14   DENIED.

15          V.      Intentional and Negligent Infliction of Emotional Distress

16          Washington does not recognize claims for intentional or negligent infliction of emotional

17   distress by an employee against his or her employer "when the only factual basis for emotional

18   distress [is] the discrimination claim."  Little v. Windermere Relocation, Inc., 301 F.3d 958, 972

19   (9th Cir. 2002) (citations omitted); Anaya v. Graham, 89 Wn. App. 588, 596 (1998).  Citing

20   Plaintiff's testimony regarding the source of his stress during his deposition, Defendant argues

21   that Plaintiff's emotional distress claims are based solely on the allegedly discriminatory events

22   that form the basis for Plaintiff's other claims.  (Dkt. Nos. 28 at 20-22, 38 at 10-11.)  Plaintiff

23   does not address these claims in his Response.  (Dkt. No. 34.)

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 15

1   The Court concludes the emotional distress claims have the same factual basis as

2   Plaintiff's discrimination claims.  If Plaintiff prevails on his discrimination claims, he will be

3   able to obtain emotional distress damages.  Summary judgment on these claims is GRANTED.

4                                           **Conclusion**

5   The Court GRANTS in part and DENIES in part the motion.  Genuine issues of material

6   fact preclude summary judgment on Plaintiff's discrimination the basis of race, national origin,

7   and religion claims.  Because the factual basis for these claims is identical to the factual basis for

8   Plaintiff's intentional and negligent infliction of emotional distress claims, however, summary

9   judgment on the emotional distress claims is GRANTED.

10

11  The clerk is ordered to provide copies of this order to all counsel.

12

13  Dated this 11th day of August, 2015.

14

15

16  _____
    Marsha J. Pechman

17  Chief United States District Judge

18

19

20

21

22

23

24

ORDER GRANTING IN PART, DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT- 16